## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

WILLIAM D. DOWNING, on Behalf of
Himself and All Others Similarly
Situated,

     Plaintiff,

v.

FIDELITY NATIONAL TITLE
INSURANCE COMPANY, CHICAGO
TITLE INSURANCE COMPANY,
COMMONWEALTH LAND TITLE
INSURANCE COMPANY, FIRST
AMERICAN TITLE INSURANCE
COMPANY, OLD REPUBLIC
NATIONAL TITLE INSURANCE
COMPANY, and STEWART TITLE
GUARANTY COMPANY,

     Defendants.

Civil Action No.:

3:16-cv-119-TCB

Complaint – Class Action

Jury Trial Demanded

## <u>COMPLAINT</u>

Plaintiff William D. Downing, individually and on behalf of all others similarly situated, files his Complaint alleging a conspiracy to defraud buyers of title insurance throughout the State of Georgia against Fidelity National Title Insurance Company, Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, First American Title Insurance Company, Old Republic

1

National Title Insurance Company, Stewart Title Guaranty Company, and other named and unnamed co-conspirators.  Plaintiff alleges the following upon personal knowledge as to his own acts and information and belief and investigation by counsel as to all other allegations.

In the midst of the Great Recession, the Defendants, who are the major title insurers in this state, faced a severe downturn in business.  According to the American Land Title Association, total premiums written in the state dropped by more than 35% in 2008.  In response to lower consumer demand, the Defendants conspired to defraud consumers into paying higher prices through a campaign of continuing misrepresentations to their agents that title insurers were required by law to charge their published prices.  Beginning in 2009, the Defendants used this scheme to eliminate discounts generally and eliminate reissue credits specifically.

Georgia is not a file-and-use state for title insurance.  Title insurance is exempt from the chapter of the Georgia Insurance Code governing the regulation of rates.  O.C.G.A. § 33-9-3.  In fact, title insurers can discount off published prices.  O.C.G.A. § 33-6-5(6)(B)(i); Georgia Op. Atty. Gen. No. 83-31.  This scheme has resulted in higher transaction prices for buyers of title insurance throughout the State of Georgia from 2009 to the present.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff William D. Downing is a resident of Fayette County, Georgia.   He purchased lender's title insurance from Fidelity National Title Insurance Company ("Fidelity") on or about May 25, 2012 to obtain a mortgage for his existing residence in Fayette County, Georgia.   He paid the Fidelity list price.  (See Exhibit 4.)  Mr. Downing had an existing title insurance policy for the identical property issued at the published rate on or about April 28, 2004.

2.     Defendant Fidelity National Title Insurance Company ("Fidelity") is a California corporation with its principal place of business at 3210 El Camino Real, Suite 200, Irvine, California 92602.  Fidelity has offices at 990 Hammond Drive, Suite 550, Atlanta, Georgia 30328 and may be served through its registered agent at CT Corporation System, 1201 Peachtree St., NE, Atlanta, Georgia 30361.

3.     Defendant Chicago Title Insurance Company ("Chicago Title") is a Nebraska insurance company with its principal place of business at 3210 El Camino Real, Suite 200, Irvine, California 92602.  Chicago Title has offices at 4170 Ashford Dunwoody Road, Suite 460, Atlanta, Georgia 30319 and may be served through its registered agent at CT Corporation System, 1201 Peachtree St., NE, Atlanta, Georgia 30361.

4.     Defendant Commonwealth Land Title Insurance Company ("Commonwealth") is a Nebraska insurance company with its principal place of business at 3210 El Camino Real, Suite 200, Irvine, California 92602. Commonwealth has offices at 4170 Ashford Dunwoody Road, Suite 460, Atlanta, Georgia 30319 and may be served through its registered agent at CT Corporation System, 1201 Peachtree St., NE, Atlanta, Georgia 30361.

5.     Defendant First American Title Insurance Company ("First American") is a Nebraska insurance company with its principal place of business at 1 First American Way, Santa Ana, California 92707.  First American has offices at Six Concourse Parkway, Suite 2150, Atlanta, Georgia 30328 and may be served through its registered agent at Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

6.     Defendant Old Republic National Title Insurance Company ("Old Republic") is a Minnesota insurance company with its principal place of business at 3000 Bayport Dr., Suite 1000, Tampa, Florida 33607-8402.  Old Republic has offices at 1125 Sanctuary Parkway, Suite 140, Alpharetta, Georgia 30009 and may be served through its registered agent Timothy Minors at 1125 Sanctuary Parkway, Suite 140, Alpharetta, Georgia 30009.

7.     Defendant Stewart Title Guaranty Company ("Stewart") is a Texas insurance company with its principal place of business at 1980 Post Oak Blvd., Suite 800, Houston, Texas 77056.  Stewart has offices at 200 Mansell Court East, Suite 400, Roswell, Georgia 30076 and may be served through its registered agent at CT Corp Systems, 2 Peachtree St., NE, Atlanta, Georgia 30383.

8.     Defendants are subject to the personal jurisdiction of this Court.

9.     This Court has diversity jurisdiction over the claims pursuant to 28 U.S.C. § 1332(d): Plaintiff is citizen of a state different from any defendant and the amount in controversy exceeds the value of $5,000,000, exclusive of interest and costs.

10.     Venue is proper in this district under 28 U.S.C. § 1391:  Defendants reside in the Northern District of Georgia, and a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of Georgia, and substantial part of property that is the subject of the action is situated in the Northern District of Georgia.

**NATURE OF THE CASE**

11.     The Real Estate Settlement Procedures Act ("RESPA") was enacted to encourage competition for provision of settlement services, including title insurance.  RESPA specifically prohibits a seller from requiring the buyer to use a

particular title insurance company, either directly or indirectly, as a condition of sale.  12 U.S.C. § 2608.  Furthermore, the lender is required to provide a good faith estimate of the costs of title insurance and other settlement services to the borrower to allow the purchaser to shop for the lowest possible price.  12 U.S.C. § 2604(c).

12.     Since March 1, 2009, customers have paid more than one billion dollars in premiums on title insurance in Georgia.  According to the American Land Title Association, the Defendants had a combined market share of more than 90% in Georgia for 2015.

13.     Georgia has never been a file-and-use state for title insurance.  Title insurers are not required to file their rates.  O.C.G.A. § 33-9-3(a)(6); Ga. Op. Atty. Gen. No. 83-31.

14.     In addition, title insurers can discount off their published prices. O.C.G.A. § 33-6-5(6)(B)(i); Ga. Op. Atty. Gen. No. 83-31.  The agent is simply required to collect no more and no less than the premium specified by the insurer on the policy.  O.C.G.A. § 33-6-5(6)(B)(i); Ga. Op. Atty. Gen. No. 83-31.

15.     There is no requirement in the statute that the insurer fix the rate for a policy at the list price.  Prior to the scheme, Defendants offered reissue credits to purchasers of title insurance for a discount off the list price on the new policy of 40% or more of the premium paid for an existing policy on that same property.

Reissued policies require far less costs in searching the title and underwriting the policy.

16.     Moreover, Plaintiff and its counsel cannot locate any record of an announcement by the Department of Insurance to conduct hearings or make rules or regulations to effect a change in the law to prohibit title insurers from discounting off published rates.  Nor is there any record that the Department of Insurance instructed Defendants to charge their published rates.

17.     At the height of the Great Recession in early 2009, the major title insurers in this state – Fidelity, Chicago Title, Commonwealth, First American, Old Republic, and Stewart – agreed that they would eliminate discounts under the false pretense that they were now required by law to charge list prices.  Multiple real estate law firms reported on their web sites at that time that the major title insurers had reached an "agreement" that they were required by law to charge their list prices.  In at least one instance, the report identified each of the Defendants.

18.     Since that time, the Defendants have continually misrepresented to their agents that title insurers are required by law to charge list prices for title insurance in Georgia.  Many agents represented several title insurers and received the instructions on price lists issued by most or all of the Defendants.

19.   The Defendants deleted all references to reissue credits and instructed agents that title insurers are required by law to charge the list price.  As a result, a request for a reissue credit would have been futile.

20.   The Defendants have used the scheme to eliminate discounts and raise transaction prices to consumers purchasing reissued policies.

21.   Specifically, the Defendants issued new price lists to their agents in this state through use of interstate wires and interstate mail to create the false impression that title insurers were required by law to charge list prices.  (Exhibits 1-5.)

> "In accordance with instructions from the Georgia Insurance Commissioner, these charges have been filed with the Department of Insurance and are those that must be charged to the consumer." (Exhibit 1 at 1 (originally announced policy effective May 1, 2009).)

> "[I]t is our present understanding that the Georgia Department of Insurance requires that the rates Old Republic National Title Insurance Company has published to you are the rates you must charge."  (Exhibit 2 at 2 and 12.)

> "In accordance with the Georgia Department of Insurance's instructions . . ." "[t]hese rates are published and are the rates that you are required to charge and upon which you are required to remit in accordance with O.C.G.A. § 33-6-5(6)(B)(i)."  (Exhibit 3 at 4.)

> "In accordance with the Georgia Department of Insurance's instructions . . ." "these published rates are the rates that you are required to charge and on which your remittance must be made in accordance with O.C.G.A. § 33-6-5(6)(B)(i)."  (Exhibit 4 at 8.)

"In accordance with the Georgia Department of Insurance's instructions . . ." "these published rates are the rates that you are required to charge and on which your remittance must be made." (Exhibit 5 at 1.)

22.     The Defendants created the false impression that the Department of Insurance had instructed the Defendants to charge their list prices.  In addition, the Defendants created the false impression that title insurers are required by law to charge their list prices.  The Defendants also concealed the fact that they had an understanding with other title insurance companies to eliminate discounts in violation of O.C.G.A. § 33-6-13(a).

23.     Even though the elimination of the discounts should have resulted in lower list prices, the Defendants did not reduce list prices to reflect the elimination of the discount.  Therefore, transaction prices for reissued policies – which would be expected to decline as a result of lower consumer demand – actually rose considerably.

24.     Defendants continued to provide these price lists to their agents in this state for more than two years.  Defendants allowed their agents to rely on the misrepresentations and omissions in those price lists throughout that time.

25.     In the middle of 2012, at least four of the six Defendants – Stewart, Chicago Title, Commonwealth, and First American – issued new price lists to their agents in this state by use of interstate wires and interstate mail with language that

was identical or nearly identical to the statements in their price lists from 2009. (*See, e.g.*, Exhibits 6 at 4, 7 at 1.)  None of the Defendants retracted their prior instructions.   Defendants thereby maintained the false impression that the Defendants were required by law to charge their published rates and concealed the fact that they had an understanding with other title insurance companies to eliminate discounts.  The Defendants raised their list prices by roughly 10% across the board.

26.    Defendants have continued to this date to misrepresent in writing that they are required by law to charge their published rates.  For example, Stewart was still using identical language from its price list in 2009 in its price list in 2014. (Exhibit 8 at 7.)

27.    During this entire period, Defendants, which are all foreign corporations, have received the proceeds of these transactions through the use of United States mail (including the Postal Service and private and commercial interstate carriers) and interstate wires.

28.    But for the unlawful actions of Defendants, Plaintiff would have received a discount, *i.e.*, reissue credit, and paid a lower net price on his purchase of title insurance on or about May 25, 2012.  The Defendants did not reduce their

list prices to reflect the elimination of the reissue credit, much less the decline in consumer demand.

29.   Even assuming that the list prices had declined by market forces after the purchasers of new policies and the purchasers of reissued policies were classified under the same prices, the list prices would not have declined to the expected price for reissued policies standing alone.  But for the elimination of the discount, reissued policies had a lower cost – and had a lower expected price – than new policies.

## CLASS ACTION ALLEGATIONS

30.   Plaintiff brings this action on behalf of persons who purchased title insurance in Georgia at any time from March 1, 2009 to the present (the "Class") for a property that had an existing title insurance policy issued less than ten years before the purchase of the new title insurance policy.  The "Class Period" is from March 1, 2009 to the present.

31.   The Class is so numerous that joinder of all Class members is impracticable.  Plaintiff believes that the Class contains more than 100,000 members and that the actual number of Class members can be ascertained through discovery.

32.     There are numerous questions of law and fact common to the Class, and their resolution will be material to the legal claims asserted.  These questions include, but are not limited to:

(a)     Were Defendants required by law to charge published rates for title insurance?

(b)     Did the Defendants intend to create and maintain the false impression that the Defendants were required by law to charge their published rates for title insurance?

(c)     Did the Defendants intend to conceal the fact that they had an understanding with other title insurance companies to eliminate discounts?

(d)     Did the Defendants intend to conceal the fact that they had an understanding with other title insurance companies to raise prices?

(e)     Was it reasonably foreseeable that interstate wires would be used for the purpose of executing the scheme?

(f)     Were any interstate wires used for the purpose of executing the scheme to defraud?

(g)     Did Defendants intentionally participate in a scheme to defraud and use interstate wires for the purpose of executing the scheme in violation of 18 U.S.C. § 1343?

(h)     Was it reasonably foreseeable that United States mail would be used for the purpose of executing the scheme?

(i)     Was United States mail used for the purpose of executing the scheme to defraud?

(j)     Did Defendants intentionally participate in a scheme to defraud and use United States mail for the purpose of executing the scheme in violation of 18 U.S.C. § 1341?

(k)     Have Defendants engaged in a pattern of racketeering activity under the state RICO statute?

(l)     Did the Defendants conspire to engage in a pattern of racketeering activity?

33.     The questions of law and fact common to all Class members predominate over any questions that may affect only individual Class members.

34.     A class action is a superior method of adjudicating the Class members' claims because individual actions would unnecessarily burden the Court and create the risk of inconsistent results.

35.     The claims of Plaintiff are typical of the claims of the Class members. Plaintiff and all putative Class members purchased title insurance and overpaid by reason of the statewide conspiracy by Defendants.  Plaintiff has no interests that are antagonistic or adverse to the other Class members.

36.     Plaintiff will fairly and adequately protect the interests of the Class.

37.     Plaintiff is an adequate representative of the Class.  Plaintiff has retained counsel experienced in class action litigation, complex litigation, and RICO litigation.  Plaintiff and its counsel have engaged in a lengthy factual and legal investigation to develop this case.  Accordingly, Plaintiff will fairly and adequately protect and represent the interests of the Class.

38.     Plaintiff seeks certification of a class, alternatively, under Fed. R. Civ. P. 23(b)(2) or 23(b)(3), or a combination thereof.

39.     Defendants' scheme has the effect of inflating prices for title insurance to the detriment of Plaintiff and all Class members.  Accordingly, declaratory and injunctive relief that prevents Defendants from continuing to misrepresent facts is appropriate on a Class-wide basis.

40.     Given the significant expense required to prosecute the foregoing claims against Defendants, the costs of individual actions may well approach or exceed the amount recovered in any individual action.  The expense of pursuing

individual actions would require many individual Class members to forego their individual claims against Defendants if they are not permitted to pursue those claims as a class.

41.   This action is manageable because the evidence proving that Defendants is engaging in the alleged conduct is common to the Class. Furthermore, the identities of the Class members are known to Defendants.

## COUNT I
## Violation of O.C.G.A. § 16-14-4(a) (Georgia RICO Act)

42.   The foregoing allegations are incorporated by reference as if fully set forth herein.

43.   Defendants have engaged in an open and ongoing pattern of violations of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and O.C.G.A. § 16-8-102 from March 1, 2009 to the present.  Defendants have a confidential and fiduciary relationship with their agents.   As part of the mortgage closing process, Defendants have intentionally made material misrepresentations to their agents and omitted and concealed material information from their agents by use of United States mail and interstate wires to create and maintain the false impression that the Defendants were required by law to charge their published rates and conceal the fact that they had an understanding with other title insurance companies to eliminate discounts. Defendants, who are all foreign corporations, have received the proceeds of these

transactions through the use of United States mail (including the Postal Service and private and commercial interstate carriers) and interstate wires.

44.     Defendants are engaged in an ongoing pattern of racketeering activity as defined by O.C.G.A. § 16-14-3(8)(A).

45.     The pattern of racketeering activity consists of more than two acts of racketeering activity for the purpose of executing the scheme to defraud.  The last of such acts occurred within four years after the commission of a prior act of racketeering activity.

46.     Specifically, Defendants have violated and continue to violate 18 U.S.C. § 1341, which makes it a federal crime to intentionally participate in a scheme to defraud and use United States mail for the purpose of executing the scheme.  For more than six years, Defendants have intentionally made material misrepresentations and omitted and concealed material information that was reasonably calculated to deceive persons of ordinary prudence.  Those statements and omissions were intended to create and maintain the false impression that the Defendants were required by law to charge their published rates and conceal the fact that they had an understanding with other title insurance companies to eliminate discounts.  The United States mail was knowingly used for the purpose of executing that scheme.  Such use was reasonably foreseeable.

47.    Each violation of 18 U.S.C. § 1341 constitutes an act of racketeering activity under O.C.G.A § 16-14-3(9)(A)(xxix) and 18 U.S.C. § 1961(1)(B).

48.    Specifically, Defendants have violated and continue to violate 18 U.S.C. § 1343, which makes it a federal crime to intentionally participate in a scheme to defraud and use interstate wires for the purpose of executing the scheme.  For more than six years, Defendants have intentionally made material misrepresentations and omitted and concealed material information that was reasonably calculated to deceive persons of ordinary prudence.  Those statements and omissions were intended to create and maintain the false impression that the Defendants were required by law to charge their published rates and conceal the fact that they had an understanding with other title insurance companies to eliminate discounts.  The interstate wires were knowingly used for the purpose of executing the scheme.  Such use was reasonably foreseeable.

49.    Each violation of 18 U.S.C. § 1343 constitutes an act of racketeering activity under O.C.G.A § 16-14-3(9)(A)(xxix) and 18 U.S.C. § 1961(1)(B).

50.    Defendants have also violated and continue to violate O.C.G.A. § 16-8-102(1), which makes it a state crime to knowingly make any deliberate misstatement or misrepresentation during the mortgage lending process with the intent to defraud and with the intention that it be relied on by any party to the

mortgage lending process.  For more than six years, Defendants have kept the misstatements and misrepresentations in their price lists in effect with the intention that they be relied on by their agents in the mortgage lending process.

51.     Each violation of O.C.G.A. § 16-8-102 constitutes an act of racketeering activity under O.C.G.A § 16-14-3(9)(A)(xxxx).

52.     The acts of racketeering activity committed by Defendants have the same or similar methods of commission.  They involve statements and omissions intended to create and maintain the false impression that the Defendants were required by law to charge their published rates and conceal the fact that they had an understanding with other title insurance companies to eliminate discounts.  They involve similar and sometimes identical language.

53.     The acts of racketeering activity committed by Defendants have the same or similar objective: inflate prices for title insurance and increase profits for the Defendants.

54.     The acts of racketeering activity committed by Defendants have the same or similar victims, including Plaintiff and other Class members.

55.     The acts of racketeering activity committed by Defendants are otherwise related by distinguishing characteristics including, but not limited to, the involvement of the major title insurers in Georgia.

56.    Defendants' acts of racketeering activity involve a distinct threat of long-term racketeering activity.

57.    Defendants' practice of knowingly and intentionally misrepresenting that they are required by law to charge the published rates for title insurance in Georgia has continued for at least six years, is ongoing at the present time, and will continue into the future unless halted by judicial intervention.

58.    Defendants' material misrepresentations that they are required by law to charge the published rates for title insurance in Georgia are part of their regular way of conducting business.

59.    In violation of O.C.G.A. § 16-14-4(a), the Defendants have acquired an interest in personal property, including money, through the pattern of racketeering activity described in this Complaint.

60.    Plaintiff and the other Class members have been injured by reason of Defendants' violations of O.C.G.A § 16-14-1 et seq. and have suffered actual damages, prior to trebling of damages, in an amount to be proven at trial.

61.    Under O.C.G.A. § 16-14-6(c), Plaintiff and the other Class members are entitled to threefold the amount of any actual monetary damages incurred as a result of Defendants' pattern of racketeering activity.

62.     Under O.C.G.A. § 16-14-6(c), Plaintiff and the other Class members are entitled to recover attorneys' fees and other costs from the Defendants.

63.     The acts and conduct by the Defendants as set forth above showed willful misconduct, malice, fraud, wantonness, oppression and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Plaintiff and other Class members to receive punitive damages sufficient to deter, penalize, or punish the Defendants in light of the circumstance of the case under O.C.G.A. § 16-14-6(c).

## COUNT II

### Violation of O.C.G.A. § 16-14-4(c) (Georgia RICO Act)

64.     The foregoing allegations are incorporated by reference as if fully set forth herein.

65.     The Defendants have conspired and endeavored to violate the provisions of O.C.G.A. § 16-14-4(a).

66.     Plaintiff and the other Class members have been injured by reason of Defendants' violations of O.C.G.A § 16-14-4(c) and have suffered actual damages, prior to trebling of damages, in an amount to be proven at trial.

67.     Under O.C.G.A. § 16-14-6(c), Plaintiff and the other Class members are entitled to threefold the amount of any actual monetary damages incurred as a result of Defendants' pattern of racketeering activity.

68.     Under O.C.G.A. § 16-14-6(c), Plaintiff and the other Class members are entitled to recover attorneys' fees and other costs from the Defendants.

69.     The acts and conduct by the Defendants as set forth above showed willful misconduct, malice, fraud, wantonness, oppression and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Plaintiff and other Class members to receive punitive damages sufficient to deter, penalize, or punish the Defendants in light of the circumstance of the case under O.C.G.A. § 16-14-6(c).

## PRAYER FOR RELIEF

Plaintiffs respectfully ask that this Court:

(a)     enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3);

(b)     conduct a jury trial of all claims and issues as to which there is a right to jury trial;

(c)     enter judgment awarding damages to the Plaintiffs and the class in an amount to be determined and trebled as provided in O.C.G.A. § 16-14-6(c);

(d)     enter permanent injunctive relief in favor of Plaintiffs and the class to prevent the threat of loss or injury by violation of the racketeering laws as provided in O.C.G.A. § 16-14-6(c);

(e)     award Plaintiffs the cost of this suit, including reasonable attorney's fees, as provided in O.C.G.A. § 16-14-6(c);

(f)     award punitive damages sufficient to deter, penalize, or punish the Defendants in light of the circumstance of the case under O.C.G.A. § 16-14-6(c); and

(f)     order any other and further relief as this Court deems proper and just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

Respectfully submitted on July 26, 2016.

/s Jeff Berhold
Jeffrey L. Berhold
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800 Telephone
(678) 868-2021 Fax
jeff@berhold.com

/s Tom Lacy
W. Thomas Lacy
Georgia Bar No. 431032
The Lacy Law Firm P.C.
P.O. Box 3078
Peachtree City, Georgia 30269
(770) 486-8445
(770) 486-8889
tlacy@lacyfirm.com

**COUNSEL FOR PLAINTIFF**

This document was created in size 14 Times New Roman font.